750 So.2d 301 (1999)
Joza J. SLAVICH and Zdenka Slavich
v.
John J. KNOX, M.D.
No. 99-CA-1540.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1999.
*302 Leonard A. Radlauer, Radlauer & Bernstein, New Orleans, Louisiana, Attorney for Plaintiffs/Appellees.
Michael R. Sistrunk, Catherine M. Williams, Marty D. Parlipiano, Campbell, Mccranie, Sistrunk, Anzelmo & Hardy, P.C., Metairie, Louisiana, Attorneys for Defendant/Appellant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III.
JAMES F. McKAY, III, Judge.
The defendants, the Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation Fund Oversight Board appeal the judgment in favor of the plaintiffs, Zdenka Slavich and Joza Slavich, and against the now deceased defendant John Knox M.D. for medical malpractice for failure to diagnose plaintiff with liposarcoma.
The plaintiff was a patient of Dr.Knox for over two years before she was diagnosed with cancer in 1994. Prior to this diagnosis, between November of 1992 and February of 1993, the plaintiff noticed a lemon size mass on her left buttock and hip, which she allegedly mentioned to Dr. Knox during her visit on February 4, 1993. Allegedly, Dr. Knox did not respond to her complaint nor did he make any notation of the complaint in her medical record. She again mentioned the lump to Dr. Knox on August 16, 1993. The abnormality was noted in her medical records. However, Dr. Knox attributed this to weight gain on the left side of her body. He encouraged her to lose weight and exercise. On August 23, 1992, she returned to Dr. Knox for a hormone injection, but no mention of the lump was noted in the record. The plaintiff admits that by November of 1993 she noticed that the lump was becoming more differentiated but failed to mention it to any physician. Between the time when she noticed the lump and when she mentioned it to Dr. Logaglio, she made subsequent visits to Dr. Knox, without referencing the lump. On October 5, 1994, she saw Dr. Philip Logaglio and showed him the lump because it was growing and impeding her ability to walk. He immediately referred her to Dr. David Tibbs, a general surgeon, who immediately removed the lump and had it biopsied. The biopsy revealed an advanced stage of liposarcoma. She ultimately underwent surgery for a radical buttockectomy to remove all of her muscle and tissue in her left buttock. Two years later she was diagnosed with a football size cancerous tumor in her abdomen. She subsequently underwent several more surgeries, chemotherapy, as well as radiation treatments. She continues to require medical treatment for her advancing condition.
On May 8, 1995 the plaintiffs filed a complaint with the Patient's Compensation Fund requesting that a medical review panel be convened. On March 18, 1996, the Medical Review Panel issued its opinion finding that the evidence did not support the conclusion that Dr. Knox failed to meet the applicable standard of care as charged in the plaintiffs' complaint. In its reasons for its opinion, that panel based its decision upon the opinion that there is no documentation in the record that plaintiff ever complained of any mass in the buttock area. The plaintiffs ultimately filed suit and on September 8-9, 1998, a trial on the merits was held. The jury returned a verdict finding that Dr. Knox *303 failed to meet the applicable standard of care and awarded Mrs. Slavich $3,500,000.00, in general damages, and Mr. Slavich $500,000.00 for his loss of consortium. The jury also found Ms. Slavich was 25% comparatively negligent. On October 2, 1999, a judgment was rendered ordering Dr. Knox's succession and his malpractice insurer LAMMICO, to pay the plaintiffs $100,000.000 and ordering the Louisiana Patient's Compensation Fund to pay the plaintiffs a total of $677,605.39 plus interest from May 8, 1995, until paid, costs of the proceedings, and for all future medical treatment rendered to the plaintiff related to the metastasizing liposarcoma.
The appellants appeal the judgment of the trial court asserting the following assignments of error:
1. The trial court committed manifest error in allowing plaintiff's treating oncologist to testify regarding the standard of care applicable to an internist.
2. The jury committed manifest error in finding Dr. Knox breached the applicable standard of care in failing to diagnose plaintiff with liposarcoma when plaintiff produced no evidence that Dr. Knox was aware that plaintiff had a mass on her left buttock.
3. The jury committed manifest error in assessing plaintiff with only 25% of the fault.
4. The judgment fails to reduce the award by the degree of fault allocated by the jury to the plaintiff.

Standard of Review:
In a medical malpractice action a plaintiff faces a two-fold burden: first to establish by a preponderance of the evidence that the physician's treatment fell below the ordinary standard of care in his medical specialty; second, to prove a causal relationship between the alleged negligent treatment and the resulting injury. La. R.S. 9:2794; Morris v. Ferriss, 95-1790 (La.App. 4 Cir. 2/15/96), 669 So.2d 1316, writ denied, 96-0676 (La.4/26/96), 672 So.2d 671; Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La. 1991); Snia v. United Medical Center of New Orleans, 93-2367 (La.App. 4 Cir. 5/26/94), 637 So.2d 1290, writ denied, 94-1653 (La.10/7/94), 644 So.2d 637.
We are instructed that before a factfinder's verdict may be reversed, we must find from the record that a reasonable factual basis does exist for the verdict, and that the record establishes the verdict is manifestly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review the fact, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 221. (La.1994).
The standard of review in medical malpractice cases is manifest error. Richoux v. Metropolitan Gastroenterology, 522 So.2d 677 (La. 5th Cir.1988); Malbrough v. Hamsa, 463 So.2d 639 (La.App. 5th Cir.1984); Protti v. Tolmas, 459 So.2d 614 (La.App. 5th Cir.1984); Moore v. Healthcare Elmwood Inc., 582 So.2d 871 (La.App. 5th Cir.1991).

Assignment I
The defendants contend that the trial court committed manifest error in allowing plaintiffs treating general surgeon to testify regarding the standard of care applicable to an internist.
Dr. Tibbs, Ms. Slavich's general surgeon, testified that after reviewing Dr. Knox's office records of the August 16, 1993 visit, wherein he noted an abnormality in the mass that was growing on one side of her body, he concluded that Dr. Knox's treatment of the plaintiff fell below the applicable standard of care. Dr. Tibbs, *304 articulated a standard of care for any physician. He stated that an abnormality cannot be ignored, and failure to properly follow up, as Dr. Knox failed to do, breaches the standard of care.
A physician's duty is to exercise the degree of skill ordinarily employed by his professional peers under similar circumstances. The law does not require absolute precision in medical diagnoses. Acts of professional judgment are evaluated in terms of reasonableness under the circumstances then existing, not in terms of the result or in light of subsequent events. Soteropulos v. Schmidt, 556 So.2d 276, 278 (La.App. 4th Cir.1990); Jackson v. Huang, 514 So.2d 727 (La.App. 2nd Cir. 1987); writ denied, Jackson v. Huang, 518 So.2d 1050 (La.1988), writ denied, 519 So.2d 119 (La.1988).
The defendants complain that Dr. Tibbs was Ms. Slavich's general surgeon and not qualified to testify as an expert on the standard of care for an internist. We disagree. It is the specialist's knowledge of the requisite subject matter, rather than the specialty within which the specialist practices, which determines whether a specialist may testify as to the degree of care which should be exercised; a particular specialist's knowledge of the subject matter on which he is to offer expert testimony is determined on a case by case basis. McLean v. Hunter, 495 So.2d 1298 (La. 1986). Furthermore, in Pfiffner v. Correa, 643 So.2d 1228 (La.1994), the Louisiana Supreme Court addressed the issue that there is no requirement that a physician have the same specialty as defendant physician in cases where the medical and fact issues are such that a jury can perceive negligence in the physician's conduct.
Dr. Tibbs was clear under both direct and cross-examination about his opinion on the delinquency and misjudgment of Dr. Knox in failing to diagnose Ms. Slavich's condition. The jury heard all of the evidence at trial and concluded that Dr. Knox's treatment fell below the medical standard and that it reached the level of medical malpractice. Based on the law and the evidence we can only conclude that Dr. Tibbs was qualified to testify on the subject matter. We find no error on the trial court's ruling concerning the expert witness, Dr. Tibbs. This assignment is without merit.

Assignment II
The defendants also contend that the jury committed manifest error in finding Dr. Knox breached the applicable standard of care, in that he failed to diagnose plaintiff with liposarcoma when the plaintiff produced no evidence that Dr. Knox was aware that the plaintiff has a mass on her left buttock.
Dr. Knox had treated Ms. Slavich for a number of years for a myriad of medical problems, prior to the discovery of this problem. His misdiagnosis of the lump as weight gain on the left side of her body was clearly below the standard of care. He was the physician who was in the best position to have recognized this potentially serious condition where an early diagnosis had the potential to reduce the chances of her now precarious condition. Yet, only a single notation in her record indicates some abnormality to her left buttock and that was attributed to weight gain on her left side. The record clearly reveals that Dr. Knox breached the normal standard of care for his profession and his area of expertise as an internist by failing to investigate the problem and diagnose the condition that ultimately resulted in serious harm to his patient.
The law does not require perfection in medical diagnoses and treatment. On the contrary, a doctor's professional judgment and conduct must be evaluated in terms if reasonableness under the then existing circumstance, not in terms of results or in light of subsequent events. Soteropulos v. Schmidt, supra. Fraser v. Ochsner Foundation Hospital, 94-380 (La.App. 5 Cir. 12/28/94), 648 So.2d 1081.
*305 In this medical malpractice action Ms. Slavich and Mr. Slavich have sustained their twofold burden of proof. They have established by a preponderance of the evidence that Dr. Knox's treatment fell below the ordinary standard of care required by physicians in his medical specialty, and this fault caused Ms. Slavich to be denied proper medical treatment until she saw Drs. Logaglio and Tibbs. Having reviewed the record as a whole, we cannot conclude that the jury was manifestly erroneous in its determinations that Dr. Knox's treatment fell below the standard of care. Accordingly, this assignment is without merit.

Assignment III
The defendants also contend that the jury committed manifest error in assessing plaintiff with only 25% of the fault.
The Fund argues that it was the plaintiff's procrastination that caused the further development of her liposarcoma to the point that it metastasized. Furthermore, they contend that she never sought medical treatment even though the lump continued to grow. In defendants' brief, they elaborate that the plaintiff had an apparent belief that it was Dr. Knox's job to tell her that he wanted to examine her lump. They further aver that Dr. Knox never heard her mention the existence of the lump. They attempt to cast total responsibility for Ms. Slavich's condition on her own inaction.
In reviewing the jury's allocation of fault among the parties, we are guided by Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 610-611. In that case, the Louisiana Supreme Court requires intermediate courts of appeal to consider the trial court's allocation of fault under the same standard of review we apply in awards of general damage. Accordingly, trial courts have a great deal of discretion when allocating fault. This Court has opined that the allocation of fault is not an exact science, or the search for one precise ratio. Rather it is an acceptable range and any allocation within that range cannot be "clearly wrong." Riley v. Reliance Insurance Company, 97-0445 (La App. 4 Cir. 11/19/97) 703 So.2d 158, Doyle v. McKinney, 98-1102 (La.App. 4 Cir. 4/7/99), 732 So.2d 128.
Here the jury heard Dr. Tibbs' detailed testimony relating to Ms. Slavich's condition regarding the sub-standard of care administered or in this case not administered to Ms. Slavich by Dr. Knox. The record supports the plaintiff's position that Dr. Knox never undertook to treat the condition and in fact ignored the condition and attributed the abnormality on the plaintiff's left side as weight gain. Furthermore, the jury weighed all of the testimony and evidence and concluded that 25% comparative fault was attributable to the plaintiff, for failure to act on her concerns regarding her lump with more diligence. We can find no justification in the record to disturb the jury's comparative fault allocation. Accordingly, this assignment is without merit.

Assignment IV
Finally, the defendants contend that the judgment fails to reduce the award by the degree of fault allocated by the jury to the plaintiff.
We need only find after reviewing the record as a whole that the view taken by the trial court was reasonable. The record might permit two reasonable views and is a credibility call on how to weigh the evidence. Where two permissible views of evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart at 883. We may only find manifest error where a reasonable factual basis for the finding of the fact finder does not exist. Lewis v. State Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314. The defendant has not demonstrated the existence of such legal errors that could have tainted the factfinding process, nor have they shown that the trial court's findings of fact were manifestly erroneous or clearly wrong.
*306 The trial court after the return of the jury's decision, rendered the judgment in favor of the Plaintiff's, Joza and Zdenka Slavich and against the defendants William Knox, administrator of the succession of John Knox, M.D., and LAMMICO, in the sum of $100,000.00; and against the Louisiana Patient's Compensation Fund in the sum of $677,605. 39, together with interest from May 8, 1995, until paid, plus all cost of the proceedings. Furthermore, the trial court found the Fund responsible for the cost of all future medical treatment to Zdenka Slavich related to metastasizing liposarcoma. Although, the jury found Zdenka Slavich to be 25% comparatively negligent, it is apparent that the trial court deducted the 25% comparative fault amount from the 3.5 million-dollar jury award prior to formulating the final judgment of $677,605.39.
In apportioning damages a judge is not required to enumerate total damages prior to reducing damages. State Through Department of Social Services on Behalf of Harden v. Southern Baptist Hospital, 94-2228, 94-2229 (La.App. 4 Cir. 10/12/95), 663 So.2d 443, writ denied, 95-2751 (La.1/26/96), 666 So.2d 676. However, it is easy to discern how the trial court derived at this final figure. Pursuant to La. R.S. 40:1299.42(B)(1), the maximum statutory award in a medical malpractice action is limited to a maximum of $500.000.00 plus interest and cost. The plaintiff is entitled to the limits of the medical malpractice award cap of $500,000 plus interest and cost and future medical expenses. Although, this $500.000.00 cap is subject to a credit from the health care provider $100,000.00 liability. Additionally the plaintiff's past medicals, which amounted to $277,605.39, were included in the judgment. The math is neither difficult nor imposing. Clearly the trial court's calculations in its judgment awarding the plaintiff's $677.605.39 are correct.
We find no basis on which to conclude that the trial court's decision was manifestly erroneous or clearly wrong as to the factual determinations made at trial. Accordingly, the judgment is affirmed. All costs of the appeal are assessed to the appellant.
AFFIRMED.