GUIDRY, Justice*
|, We granted the defendant physician’s writ application in this medical malpractice action to determine whether he is entitled to summary judgment on the ground that the plaintiff is unable to produce any expert witness evidence in support of her claims the physician breached the applicable standard of care and this breach caused her injuries. The trial court denied the defendant’s motion for summary judgment, stating that expert medical evidence was not necessary under Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, for the plaintiff to prove her medical malpractice claim, despite the fact that the defendant’s motion was supported by the unanimous opinion of the medical review panel and an affidavit of one of its members. The court of appeal denied the defendant’s writ application. On our de novo review of the defendant’s motion for summary judgment, the accompanying exhibits, and the applicable law, we conclude there were no genuine issues of material fact and the defendant was entitled to summary judgment as a matter of law. Accordingly, for the reasons set forth below, we reverse the lower courts’ rulings and render summary judgment in favor of the defendant.
| .FACTS
In April 2002, Leanne Brow, then age fourteen and eleven months, consulted Dr. Janos Guoth, an obstetrician-gynecologist, complaining of cramps and having missed her period. Ms. Brow was diagnosed with oligomenorrhea (infrequent menstruation) and instructed to return for a pregnancy test in one week. Ms. Brow returned to Dr. Guoth on October 29, 2002, and was then determined to be 28.4 weeks pregnant. On November 3, 2002, Ms. Brow presented at Oakdale Community Hospital (hereinafter, “Oakdale”) complaining of severe abdominal cramping. The emergency room physicians found her to have been in labor for two hours and noted that she was bleeding, but her vital signs were normal. Dr. Guoth and Dr. Chaftari, an emergency room physician, both examined her. Fetal' heart beats were recorded at 143 beats per minute.
Because Ms. Brow was deemed to be six months pregnant and Oakdale lacked sufficient monitoring and surgical equipment, Dr. Guoth issued a transfer order, directing that Ms. Brow be transferred to Rap-ides Women’s and Children’s Hospital (hereinafter, “RWCH”) for a higher level of neonatal care. Dr. Guoth’s order indicated the plaintiff was suffering from a placental tear. The transfer form, signed at 5:30 a.m., indicated there was no material deterioration of the patient’s condition likely to result from the transfer. Dr. Khaled F. Rabie, an obstetrician-gynecologist on call at RWCH, accepted the transfer. During the transfer, the fetal heart rate was recorded at 170.
Ms. Brow arrived at RWCH at 6:29 a.m. Upon her arrival, fetal heart tones could not be detected, and the fetus was found to be in a breech position. Dr. Rabie was notified of her arrival, and he issued orders by telephone at 6:35 a.m. Prior to Dr. *1004 Rabie’s arrival at the hospital, fetal heart rates ranging between 160-180 were | .¡recorded. Dr. Rabie arrived at 6:55 a.m. and performed an ultrasound, but was unable .to detect any fetal heart tones. At 7:13 a.m., a fetal scalp electrode (hereinafter, “FSE”) was applied, and a fetal heart rate fluctuating from 60-144 was found. Dr. Rabie ordered a C-section at 7:14 a.m. The C-section was commenced at 7:25 a.m. At 7:33 a.m., Dr. Rabie delivered a stillborn fetus.
Subsequently, Ms. Brow, hereinafter the plaintiff, filed a medical malpractice complaint against Dr. Rabie, hereinafter the defendant.[1] The matter proceeded to a medical review panel, which rendered a unanimous opinion finding the evidence did not support the conclusion that the defendant failed to meet the applicable standard of care as charged in the complaint. In its opinion, the medical review panel stated:
Dr. Rabie accepted the transfer of the patient who was determined at the time of the transfer to be stable. He responded to take care of the patient in a timely fashion, within 26 minutes of her arrival to Rapides General [sic]. It is not the standard of care to be waiting at the hospital for the transfer of a patient who is deemed to be stable at the time of the transfer. It is unfortunate that when Dr. Rabie first examined the patient, the baby was probably already dead, as determined by the absence of fetal cardiac activity on ultrasound exam. Once the order for C-section was given, the baby was delivered in an appropriate amount of time. It would have been inappropriate for Dr. Rabie to order a C-section sooner with the facts he was given earlier. It is most probable that this baby went into distress and died during the transfer. Any earlier intervention on Dr. Rabie’s part would not have affected the outcome.
Following the rendition of the medical review panel’s opinion, the plaintiff filed the instant medical malpractice suit against the defendant. In her suit, the plaintiff sought damages for the death of her unborn child. In response, the defendant filed a motion for summary judgment. Relying on the opinion of the medical review panel, as well as an affidavit from Dr. Charles Padgett, one of the panel members, the defendant argued his actions did not fall below the applicable standard of care.
RThe plaintiff opposed the motion- for summary judgment. Although she was unable to produce any expert evidence supporting her claim, she relied on this court’s opinion in Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228, for the proposition that the medical and factual issues were such that a lay jury could perceive negligence in the defendant’s actions. Specifically, she argued the facts contradicted the medical review panel’s finding the fetus was dead on arrival, as the medical records indicated the fetus had a heartbeat at 7:13 a.m.
After a hearing, the trial court denied the defendant’s motion for summary judgment. In written reasons for judgment, the trial court stated it “believe[d] that the factual issues are such that a lay person can perceive negligence in the physician’s conduct. There are genuine issues of material fact (i.e., whether Dr. Rabie timely arrived at the hospital to respond to the *1005 emergency, whether Dr. Rabie waited too long before'performing the Cesarean section, and whether his delay caused the death of plaintiffs unborn child).” The trial court went on to find that “the Medical Review Panel opinion and the individual affidavits from the members of the panel alone are not sufficient to succeed at summary judgment.” The trial court reasoned “the plaintiff need not present her own expert to defeat the defendant’s motion” because “the medical and factual issues are such that a jury can reasonably infer whether negligence occurred.”
The court of appeal initially denied the defendant’s application for supervisory writs, with one judge dissenting. The dissenting judge stated: “Given the complex medical issues involved in this case, without expert testimony the Plaintiff will be unable to sustain her burden of proving at trial that [the defendant’s] conduct constituted a breach in the applicable standard of care, and that this breach resulted in damages sustained.” Upon the defendant’s application to this court, we summarily [ ¿granted the writ and remanded the case to the court of appeal for briefing, argument, and opinion. Schultz v. Rabie, 09-1384 (La.10/2/09), 18 So.3d 119.
On remand, a 2-1 majority of the court of appeal again denied the writ application, but gave reasons for its ruling. The majority stated in part:
The hearing on the motion for summary judgment was not recorded, and we are unable to determine what evidence, if any, was submitted by Ms. Brow. However, it is possible that Ms. Brow will rely on the testimony of the defendant doctors themselves as to the standard of care, and on Dr. Rabie’s testimony regarding his alleged breach of that standard of care. In addition, as noted in Pfiffner, 643 So.2d 1228, the facts of this case could demonstrate that Dr. Rabie’s failure to respond timely, to the patient’s emergency is an example of obvious negligence that requires no expert testimony to show his fault.
After reviewing the evidence in this case and hearing arguments of counsel, the trial court determined that the jury could infer negligence from the facts of the case. The Louisiana Supreme Court noted in Pfiffner that a physician’s delay in responding to an emergency is an example of obvious negligence that would require no expert testimony.' In addition, it is possible that Dr. Rabie’s testimony in his deposition could provide Ms.' Brow with proof of a breach of the standard of care. Based on the information provided to this court, we deny Dr. Rabie’s writ application, finding ■ that there are genuine issues of material fact that warrant trial on the merits. We find that pursuant to the Pfiffner case, expert testimony is not required in'order for Ms. Brow to prove her malpractice claim.
We granted the defendant’s writ application to review the correctness of the denial of the motion for summary judgment. Shultz v. Rabie, 10-0343 (La.6/04/10), 38 So.3d 290.
LAW
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83; Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546, see La. Code Civ. Proc. art. 966. “A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of j ¿whether summary judgment is appropriate; i.e. whether there is any *1006 genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.” Samaha v. Rau, 07-1726, pp. 3-4, 977 So.2d at 882-83.
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. art. 966(B). This article provides that “the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action .... The procedure is favored and shall be construed to accomplish these ends.” La.Code Civ. Proc. art. 966(A)(2). La.Code Civ. Proc. art. 966(C)(2) sets forth the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha v. Rau, 07-1726, p. 4, 977 So.2d at 883. “At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion l7for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.” Id. (quoting Wright v. Louisiana Power & Light, 06-1181, p. 16 (La.3/9/07), 951 So.2d 1058, 1069-70).
The motion for summary judgment at issue here arises in the context of a suit for medical malpractice. To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La.Rev. Stat. 9:2794.[2] Expert testimony is gener *1007 ally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Samaha v. Ran, pp. 5-6, 977 So.2d at 888; Pfiffner v. Correa, 94-0924, 94-0968, 94-0992 (La.10/17/94), 643 So.2d 1228.
In Pfiffner v. Correa, the court recognized that expert testimony is not always required, but noted that, in most cases, the plaintiff will be unable to sustain her Isburden of proof without such evidence:
We hold that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794’s requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care, and there is objective evidence, including the testimony of the defendant/physician which demonstrates a breach thereof. Even so, the plaintiff must also demonstrate by a preponderance of the evidence a causal nexus between the defendant’s fault and the injury alleged.
Pfiffner v. Correa, 643 So.2d at 1234.
As examples of obvious negligence that could be inferred by a lay person, the Pfiffner court cited instances “where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body....” 643 So.2d at 1233-34. Other examples posited by the. Pfiffner court include “[fjailure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary....” Id.
DISCUSSION
The defendant contends he has presented sufficient evidence to support a prima facie case for summary judgment. He points out that he has introduced the unanimous opinion of the medical review panel, which concluded he did not fail to meet the applicable standard of care, as well as an affidavit of a member of the panel who clearly stated the defendant did not breach the applicable standard of care.
Once he satisfied his burden, the defendant contends the burden shifted to the plaintiff to show there are genuine issues of material fact. The defendant points out |9that the plaintiff has not produced an expert witness qualified in the field of obstetrics and gynecology during the two years this claim has been pending.
The defendant argues the plaintiffs reliance on Pfiffner v. Correa is misplaced. He contends the instant case does not involve obvious negligence; rather, he asserts this case involves complex medical issues, such as the significance of fluctuating fetal heart tones, decisions regarding the infant’s viability, and questions of *1008 whether an immediate C-section was appropriate. The defendant argues a layman could not infer negligence under the facts of this case, or determine whether the fetus was ever even viable.
The defendant further maintains the evidence he submitted establishes he did not breach the applicable standard of care in his treatment of the plaintiff, and there was no causal connection between his alleged breach and the death of the infant. In the absence of any countervailing evidence from the plaintiff, the defendant argues he is entitled to summary judgment.
The plaintiff does not contest the defendant’s account of the salient facts from the medical records as presented in the motion for summary judgment. However, the plaintiff rejects the defendant’s characterization of the case as “complex” and, instead, she views the case as one of obvious negligence. Similarly, the plaintiff rejects any suggestion the fetus was already dead at the time she arrived at the hospital. She contends the medical review panel’s conclusions are unreliable because they fail to comport with the evidence. The plaintiff notes that during the transfer the fetus’s heart rate was 170, but upon arrival, a heart beat could not be detected; however, at 6:50 a.m. and again at 7:13 a.m., a heart beat was measured. The plaintiff questions the panel’s conclusion that the fetus was probably already dead on arrival, wondering, if that were so, how the baby could have had a heart rate and why would 1 inthe defendant would have ordered an emergency C-section at 7:14 a.m. The plaintiff posits the fetus was still alive and viable upon arrival at 6:29 a.m., though certainly a “patient in extremis.”
The plaintiff argues that laymen could infer from these facts that this was an emergency, that the defendant was negligent for not readying the operating room for an emergency C-section upon arrival, that the defendant was negligent for failing to order the C-section at 6:35 a.m. and was certainly so when he failed to order the C-section at 6:55. The plaintiff additionally questions why the defendant ordered an FSE after he had detected no heart beat using the supposedly superior ultrasound. Finally, the plaintiff points to the inherent contradiction between the panel’s finding that ordering a C-section earlier in the crisis would not have been appropriate when it also found that ordering a C-section at 7:14 a.m. was appropriate. The plaintiff notes the defendant apparently thought the baby was alive when he ordered the C-section. In the plaintiffs view, laymen could infer from the non-expert evidence that, had the C-section been performed between 6:29 a.m. and 7:13 a.m., it would have been a viable birth.
Our review of the motion for summary judgment, the opinion of the medical review panel, and the affidavit of Dr. Pad-gett, the obstetrician-gynecologist and member of the medical review panel, convinces us that the defendant is entitled to summary judgment. We disagree with the plaintiff that this is a Pfiffiier case of obvious negligence, which requires no expert testimony to prove the elements of her malpractice claim. Despite the plaintiffs arguments that this case is not a difficult one, whether the defendant breached the applicable standard of care and whether that breach caused the plaintiffs injuries will turn on complex medical issues, including, as the defendant pointed out, the significance of fluctuating fetal heart tones; Inquestions regarding the interpretations of readings from an ultrasound, a heart rate monitor, and an FSE; decisions regarding the fetus’s viability; and questions regarding whether an immediate C-section was appropriate. Indeed, even the questions raised by the plaintiff herself would require the assistance of ex *1009 pert testimony to resolve. Thus, we agree with the defendant that such issues are simply beyond the province of a lay person to assess without the aid of expert testimony.
The defendant produced the medical review panel opinion and Dr. Padgett’s affidavit, which both conclude the defendant did not breach the applicable standard of care and that any earlier intervention in performing the C-section would not have affected the outcome. As in Pfiffner, there was medical testimony regarding the absence of a breach of the applicable standard of care and the absence of causation. Although the plaintiff asserts the panel’s findings are unreliable, even “silly,” the plaintiff has not produced expert medical testimony to counter the uncontradicted expert opinions of Dr. Padgett and the other panel members, who all agreed “the baby was probably already dead as determined by the absence of fetal cardiac activity on ultrasound exam.” Although the plaintiff argues the panel members ignored the medical evidence, the medical review panel opinion specifically stated that the evidence did not support the conclusion that Dr. Rabie failed to meet the applicable standard of care. Furthermore, Dr. Padgett attested that he had reviewed all of the pertinent evidence and medical records submitted to him, and, based on this review, he found the defendant had “rendered care and treatment commensurate with the appropriate applicable standards of care and that he committed no malpractice or professional negligence.”
In ruling on a motion for summary judgment, we are not free to simply disregard the movant’s unopposed expert medical evidence. The trial court believed | igthere were genuine issues suitable for trial. However, with regard to whether the defendant timely arrived at the hospital, the uncontradicted medical testimony on the standard of care was that the defendant was not required to be waiting at the hospital for the plaintiffs arrival based on the information available to the defendant at the time. As to whether the defendant waited too long to order the C-section and whether that alleged delay caused the death of the plaintiffs unborn infant, the expert medical evidence- was unanimous that the defendant did not breach the applicable standard of care- and that any earlier intervention of the defendant would not have affected the outcome. Given this expert medical testimony, ■ the trial court erred in finding this case was one of obvious negligence, which does not require expert medical evidence pursuant to the exception created in Pfiffner.
We therefore decline to apply the exception created in Pfiffner to the instant case, which does not involve “an obvious act of malpractice,” but instead involves the determination of fetal viability and whether an emergent situation was presented. Thus, we find the plaintiff was required to produce evidence from a medical expert to establish a breach of the standard of care, as well as causation. Even in Pfiffner, this court held that a causal nexus between delayed treatment and a patient’s death is not obvious and requires expert testimony. 643 So.2d at 1234. The Pfiffner court held that the plaintiff was required to establish, either through her own experts, the defendants, or the defense experts, that the physicians breached the applicable standard of care and that this breach caused the patient’s death or loss of a chance of survival. Id. As a result, the Pfiffner court held the plaintiff failed to carry his burden of proof on causation. Id.
Here, the plaintiff was required to present medical evidence to establish the defendant’s actions fell below the standard of care and caused her injuries. Without Jisthis evidence, the plaintiff has, in our *1010 view, failed to show that she will be able to carry her burden of proof at trial. The majority of the court of appeal merely speculated as to what evidence the plaintiff might be able to produce at trial to prove her claim or what elements of her case, including the standard of review and a breach thereof, she might be able to establish at trial based on the trial or deposition testimony of the defendant himself. We conclude the plaintiff, upon the defendant’s prima facie showing in his motion for summary judgment, was required to produce expert medical evidence sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. Accordingly, we find the plaintiff did not satisfy her burden of persuasion with regard to the defendant’s motion, and thus she has failed to establish a genuine issue of material fact. See La. Civ.Code art. 966(C)(2).
CONCLUSION
On our de novo review of the defendant’s motion for summary judgment, the accompanying exhibits, and the applicable law, we conclude there were no genuine issues of material fact and the defendant was entitled to summary judgment as a matter of law. Accordingly, for the reasons set forth above, we reverse the lower courts’ rulings and render summary judgment in favor of the defendant, dismissing the plaintiffs claims with prejudice.
REVERSED and RENDERED
JOHNSON, Justice, dissents and assigns reasons.
WEIMER, Justice, dissents and assigns reasons.

 Retired Judge Philip C. Ciaccio assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. Ms. Brow was a minor at the time, so the complaint was originally filed on her behalf by her mother, Sharon Schultz. When Ms. Brow subsequently reached the age of majority, she was substituted as the plaintiff. Dr. Guoth was also the subject of the medical review panel complaint and the plaintiffs suit; he was later dismissed from the suit on summary judgment.

. Revised Statute 9:2794(A) sets forth the burden of proof imposed upon the plaintiff in establishing his malpractice claim. The plaintiff must prove by a preponderance of the evidence:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use *1007 reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That’as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.