# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 17-539

**ELLEN MCDONALD**

**VERSUS**

**PAPS PATHOLOGY GROUP, INC. ET AL**

\*\*\*\*\*\*\*\*

**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF LAFAYETTE, DOCKET NO. 13-1098**
**HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth Pickett, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Sera H. Russell, III
Attorney at Law
111 Mercury Street
Lafayette, LA  70503
(337) 237-7171
Attorney for Plaintiff/Appellant: Ellen McDonald

Peter E. Sperling
Nairda T. Colon
Halley S. Carter
3700 Energy Centre, 1100 Poydras Street
New Orleans, LA  70163-3700
(504) 599-8180
Attorneys for Defendant/Appellee: Skin Pathology Assoc., Inc.

**Cooks, Judge.**

## FACTS AND PROOCEDURAL HISTORY

Ellen McDonald's (Plaintiff's) dermatologist, Dr. Christopher Hubbell (Dr. Hubbell) removed suspicious moles from Plaintiff's skin and sent them to be tested by Skin Pathology Associates, Inc. (Defendant) in July of 2010. The original report on these samples, rendered by dermato-pathologist, Dr. James Elder, M.D. (Dr. Elder), concluded the samples did not indicate melanoma. Over the course of two years Plaintiff became concerned with the reappearance of the moles. Plaintiff visited Dr. Hubbell again in 2012 for further testing. Once again he sent samples to Defendant and upon reviewing the new samples in 2012, Defendant's dermato-pathologist, Dr. Michael K. Jacobs, M.D. (Dr. Jacobs), determined they indicated melanoma. In accordance with Defendant's normal protocol Dr. Jacobs automatically re-evaluated the samples from 2010. Based upon the new information he determined that the 2010 samples indicated melanoma. Defendant alerted Plaintiff's doctor and informed him of the new findings including Dr. Elder's and Dr. Jacob's conclusion that based upon their reviewing the 2012 samples, they both agreed the 2010 samples also revealed signs of melanoma.

Plaintiff[1] filed suit against Defendant asserting a claim for medical malpractice based upon an allegation of misdiagnosis of melanoma. Plaintiff deposed Defendant's two dermato-pathologists. Defendant propounded discovery seeking the name of any expert witnesses Plaintiff would be using at trial. Plaintiff responded that she had not chosen any expert at that time. She consulted with and

---

[1] The brief filed by Plaintiff's counsel erroneously refers to "Ellen McDonald and her husband" as "Plaintiffs-Appellants." The suit contained in the record identifies only Ellen McDonald as a party Plaintiff. The suit was amended once but Ellen McDonald's husband was not added as a party to the suit. Therefore, this opinion will refer to Ellen McDonald as Plaintiff.

deposed medical experts in the field of oncology but none in the specialty of dermato-pathology. More than a year after receiving Plaintiff's response to discovery Defendants moved for summary judgment and supported their motion with an affidavit from a dermato-pathologist, Dr. Clay J. Cockerell, M.D. (Dr. Cockerell), who stated that, in his professional opinion, after reviewing the samples taken in 2010, he "agree[ed] with the original diagnosis made by Dr. James Elder of Skin Pathology Associates, Inc. of 'Clark's nevus, compound (dysplastic nevus).' Additionally, based upon [his] review of these slides, [he] saw no evidence of melanoma and would not have recommended excision." He further stated, "At all pertinent times thereto, the treatment and care rendered by Dr. James Elder and Skin Pathology Associates, Inc. met the applicable Standard of Care for Dermatopathologists."

At the close of the hearing on Defendant's motion for summary judgment Plaintiff was given thirty days to retain the services of a dermato-pathologist as her expert witness, failing which, her case would be dismissed with prejudice. The trial court explained that the thirty-day period was for the purpose of obtaining the services of an expert witness and identifying that witness to the court. It further explained that the expert witness would not have to be ready at that time to offer testimony. Plaintiff made no attempt to engage the services of such an expert witness within the time limit imposed by the trial court. In both her memorandum in opposition to Defendant's motion for summary judgment, and in brief to this court, Plaintiff indicates she does not believe it necessary to retain the services of a dermato-pathologist. After the passage of the thirty-day time period Defendant moved ex-parte for a judgment granting summary judgment. The trial court

2

granted Defendants' motion for summary judgment dismissing Plaintiff's claims with prejudice. Plaintiff appeals assigning one assignment of error:

> The District Court erred in granting summary judgment to defendant, Skin Pathology Associates, Inc. in the face of vigorous opposition by the plaintiffs (sic), including affidavit and depositions which created a serious question of fact that could only be decided by a jury.

## LEGAL ANALYSIS

Plaintiff asserts she has met her burden on summary judgment by submitting the affidavits of Dr. Hubbell and his Physician's Assistant, Thomas A. Briscoe, (PA Briscoe) both of whom attest to the fact that Dr. Elder told them his original diagnosis of "no melanoma" was in error. Dr. Hubbell states in his affidavit:

> 6. Subsequent to the April 2012 biopsy disclosing frank melanoma pathology report from the biopsy tissue of the right lateral buttocks, the pathologist Dr. Michael K. Jacobs, called and spoke to my PA, Thomas Briscoe, who informed me that Dr. Jacobs had indicated to PA Briscoe that upon review of the original biopsy specimen taken in July 2010 of the right lateral buttocks that, in fact, there was Melanoma present and that the diagnosis given originally in July 2010 was erroneous; said diagnosis in July 2010 being a reading of the specimen by Dr. James Elder, which he reported in 2010 as being minimally dysplastic (Clark's) nevus.

> 7. Upon being informed by PA Briscoe of said call by Dr. Jacobs, I, Dr. Christopher Hubbell, called Dr. Jacobs and spoke to Dr. Jacobs. During my telephone conversation with Dr. Jacobs, Dr. Jacobs confirmed that there had been an error in the original reading performed in July of 2010 and the report issued on the pathological opinion for said tissue.

> 8. Following my phone call with Dr. Jacobs, Dr. Elder called for me, and I spoke to Dr. James Elder. Dr. Elder apologized for the erroneous read and thus, erroneous pathology opinion contained in the pathology report for July 2010 tissue samples from the biopsy site of the right lateral buttocks. Dr. Elder told me that the lesion of the right lateral buttocks, upon his re-review of the original specimen from 2010, said re-review being accomplished in 2012, was indeed Melanoma and that this had been erroneously reported in 2010 as a minimally dysplastic (Clark's) nevus.

3

The affidavit of PA Briscoe is in accord with the representations in Dr. Hubbell's affidavit.

Plaintiff, in opposition to the motion for summary judgment, also submitted the deposition of Dr. Elder who testified he never talked to PA Briscoe about this matter and never discussed the 2010 slides with Dr. Hubbell. Plaintiff maintains these contradictions establish genuine issues of fact that cannot be resolved on summary judgment. Plaintiff also submitted the deposition of Dr. Jacobs and the affidavit of Dr. Taylor Curiel, MD oncologist, along with the depositions of Plaintiff's treating physicians at M.D. Anderson, Dr. Adi Diab, M.D. (Dr. Diab) and Dr. Nicholas E. Papadopoulos M.D. (Dr. Papadopoulos), for the purpose of showing that "Ms. McDonald would have had a better result had her melanoma been properly diagnosed in 2010 rather than being improperly diagnosed then, and not properly diagnosed until 2012."

Plaintiff asserts that no expert testimony is required in this case to prove Dr. Elder breached the standard of care. She relies on the state supreme court's decisions in *Schultz v. Guoth*, 10-343 (La.1/19/11), 57 So.3d 1002, and *Pfiffner v. Correa*, 94-924, 94-963, 94-992 (La.10/17/94), 643 So.2d 1228, for the proposition that she does not need an expert witness in this case to prove a breach of the standard of care because the lay fact finder "can infer negligence from the facts" testified to by Defendant or Defendant's expert witnesses. The discussion in *Schultz* concerning the instances in which medical expert witnesses are not necessary does not support Plaintiff's argument. In fact, the supreme court's holding in *Schultz* indicates just the opposite result in these circumstances.

Plaintiff places much emphasis on the allegation that Dr. Elder told Dr. Hubble he was in error regarding the 2010 diagnosis but now denies he said this to

4

Dr. Hubble. This, says Plaintiff, is a pivotal issue of material fact to be determined by a jury in a trial on the merits.

Louisiana law sets forth the burden of proof in a medical malpractice case:

In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and *where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.*

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

La.R.S. 9:2794 (emphasis added).

In *Schultz,* 57 So.3d at 1006, the Louisiana State Supreme Court explained "[t]o establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury."

Defendants filed a motion for summary judgment, and in support of their motion filed the affidavit of their expert in the specialized field of dermato-pathology, Dr. Cockerell. He stated: (1) Dr. Elder's reading of the 2010 samples

5

did not fall below the standard of care for dermato-pathologists, and (2) his reading of the samples as an expert in the field would have been the same as Dr. Elder's in 2010.

Plaintiff admitted she had not retained the services of an expert witness in the field of dermato-pathology. Additionally, she failed to submit any evidence regarding her ability to establish the standard of care for a dermato-pathologist examining her skin samples in 2010, or to demonstrate that Dr. Elder breached that standard of care when he concluded in 2010 there was no indication of melanoma.

Plaintiff's reliance on the disputed facts concerning the alleged conversation between Dr. Hubbell and/or PA Briscoe with Dr. Elder and Dr. Jacobs as an issue precluding summary judgment is misplaced. Defendant offered the testimony of its expert witness in the specialized field of dermato-pathology who opines that Dr. Elder did not breach the standard of care in his reading of the 2010 samples and further states he would have reached the same conclusion in 2010. This shifted the burden to Plaintiff to come forward with evidence she can produce at trial concerning Dr. Elder's breach of the standard of care in his actions in 2010. *See Schultz*, 57 So.3d at 1006. The only evidence Plaintiff shows on summary judgment to rebut Defendant's expert testimony is the fact that Dr. Jacobs determined in 2012, upon re-reading the 2010 samples with the benefit of hindsight, that the original reading by Dr. Elder in 2010 is now viewed as erroneous. Error does not always equate to malpractice and malpractice is not determined in hindsight.

> As to the diagnostic duties required of a dentist or a physician, an error of diagnosis is not malpractice per se. A physician or dentist is not obligated to always be correct in making a diagnosis. A diagnosis is an act of professional judgment and, in case of a misdiagnosis, malpractice exists only if it results from a failure by a

6

physician or dentist to exercise the standard or degree of care in diagnosing which would have been exercised by a member of his profession in good standing in his locality, under similar circumstances. *Borne v. Brumfield*, 363 So.2d 79 (La.App. 4th Cir. 1978).

Also, 70 C.J.S. Physicians and Surgeons § 48, page 961, states:

". . . *Whether a physician was negligent in making a diagnosis must be determined in light of conditions existing and facts known at the time thereof, and not in the light of knowledge gained through subsequent developments. . .*"

*Tillman v. Lawson*, 417 So.2d 111, 114 (La.App. 3 Cir. 1982). *See also Slavich v. Knox*, 99-1540 (La.App. 4 Cir. 12/15/99), 750 So.2d 301.

To survive this motion for summary judgment Plaintiff was required to demonstrate that she could offer expert testimony in the field of dermato-pathology that would dispute the testimony of Defendant's expert. *Id.* Plaintiff's own witness, Dr. Diab, board certified in medical oncology and internal medicine, plainly stated in his deposition he cannot offer an expert opinion regarding the reading of the 2010 slides as only a dermato-pathologist is qualified to do so:

Q. If you're called to testify at the trial of this matter, I assume you're not going to render opinions regarding the standard of care of pathologists.

A. Absolutely not.

. . . .

Q. Are you going to render any opinions that the original pathology showed melanoma or not?

A. That's not my area of expertise. So I won't do that.

Dr. Papadopoulos likewise testified that as a medical oncologist he is not qualified to interpret the 2010 slides as such "requires a pathologist."

7

Despite this information in hand, and despite the trial judge indicating that such expert testimony was necessary, Plaintiff continued to assert that such an expert witness was not necessary. Plaintiff made no attempt to procure the services of such an expert within the time frame allowed by the trial judge to avoid dismissal. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art 966(A)(3).

Plaintiff failed to show at the hearing on the motion for summary judgment that she can present any evidence at trial to: (1) establish the standard of care in 2010 that applies to Dr. Elder's reading of the slides and (2) show Dr. Elder breached the standard of care in making his diagnosis in 2010. Without such proof Plaintiff's case fails as a matter of law.

We find no error in the trial court's ruling granting Defendant's motion for summary judgment and dismissing Plaintiff's case with prejudice. The judgment of the trial court is affirmed and all costs of this appeal are assessed against Plaintiff.

**AFFIRMED.**