NOT DESIGNATED FOR PUBLICATION

| | | |
|---|---|---|
| **RODNEY GRIFFIN AND ANN M. J. GRIFFIN, INDIVIDUALLY AND AS WIFE OF RODNEY GRIFFIN** | * | **NO. 2021-C-0098** |
| | * | |
| | | **COURT OF APPEAL** |
| | * | |
| | | **FOURTH CIRCUIT** |
| **VERSUS** | * | |
| | | **STATE OF LOUISIANA** |
| **CARRINGTON PLACE, PENTEC HEALTH AND NURSE EZELL** | * * * * * * * | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-03923, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**JAMES F. MCKAY III
CHIEF JUDGE**
* * * * * *
(Court composed of Chief Judge James F. McKay III, Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins)

ASHLEY M. SCOTT
MATTHEW C. JUNEAU
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
      COUNSEL FOR DEFENDANTS/APPLICANTS

**WRIT DENIED; RULING AFFIRMED**

**APRIL 7, 2021**

Relators-Defendants, Pentec Health and Wendi Ezell ("Defendants") seek supervisory review of the district court's January 29, 2021 ruling, which denied its motion for summary judgment seeking the dismissal of the Plaintiffs' claims against them on the grounds that the Plaintiffs do not have an expert opinion to establish the Defendants' breach of the applicable standard of care.

For the following reasons, we deny this writ application and affirm the ruling of the district court.

**FACTS**

This lawsuit stems from the injuries the Plaintiffs, Rodney Griffin and his wife, Ann Griffin ("Plaintiffs") sustained as a result of the improper filling of medications into Rodney Griffin's Codman pump, a drug pump that is surgically implanted in the abdomen to deliver drugs. The Defendant, Pentec Health, was contracted to provide the services of filling the pump with the appropriate medications on a monthly basis. The Defendant, Wendi Ezell, R.N., was Pentec Health's employee that refilled Griffin's pump. At the time of the incident, Griffin was resident of the nursing home Carrington Place.

1

In 2007, prior to the injuries at issue in the current litigation, Griffin was severely injured in a vehicular accident and suffered traumatic brain injuries. Griffin was paralyzed with spasticity. A Codman pump was implanted in his abdomen to deliver medications at a constant rate for treatment of chronic pain. The pump is refilled every four to eight weeks.

On April 18, 2012, Ezell, presented at the nursing home that day to fill Griffin's pump. Ezell filled the pump with the medications, allegedly without incident. Shortly thereafter, Griffin was noted to be heavily sedated and lost consciousness. He was transferred to West Jefferson Hospital's Emergency Department, and subsequently admitted to the ICU. Griffin was administered Narcan and became alert and oriented. Ann Griffin, Griffin's wife, was informed that Griffin had overdosed on his pain medications.

The Plaintiffs filed the instant action against the Defendants on April 24, 2014, asserting Ezell had improperly administered the pain medications, allowing some of the medications seep underneath his skin. The Defendants claim that Ezell was not negligent and that the pain pump was not operating properly and was defective.

On July 21, 2020, The Defendants filed a motion for summary judgment arguing that the Plaintiffs would not be able to meet their burden of proof because they had not yet retained a medical expert. The Defendants relied upon Griffin's medical records and an affidavit by their medical expert, Dr. Irvin.

Dr. Irvin opined in his affidavit that Ezell did not breach the standard of care and that Griffin's overdose was caused by the malfunction of the Codman pump. Specifically, Irvin noted the technique utilized by Ezell was correct and within the standard of care. "She verified proper needle placement prior to starting to refill

2

and confirmed the medication was properly injected into the inner chamber when she documented that the needle removed was intact and not leaking fluid." Irvin stated that Ezell "correctly refilled Griffin's Codman pump in accordance with the physician's orders and the manufacturer's refill instructions at the time." Irvin further stated that Codman pumps, which are no longer manufactured, have a history of malfunctioning and were recalled in 2013 after the device were found to release higher doses of drugs than expected. He stated that in his opinion a malfunction of Griffin's pump "more likely than not caused his loss of consciousness." Irvin further stated that the actions of Pentec and Ezell were at all times appropriate and within the standard of care.

The Plaintiffs filed an opposition to the motion for summary judgment, arguing genuine issues of material fact exist, which prevent summary judgment. The Plaintiffs claim that Dr. Irvin is insufficient to demonstrate an absence of material issue of fact, claiming that Dr. Irvin had not examined Griffin and the Codman pump implanted in Griffin's abdomen and that as a result, his affidavit was not completely based on personal knowledge. Also, in support of their opposition, the Plaintiffs submitted Griffin's medical records and the deposition of Ann Griffin, who testified about her husband's condition, the events at the hospital, and the information she was provided.

In her deposition, Ann Griffin stated on the day of the incident, she received a call from the nursing home stating that Griffin may have had some reaction to the injection. When she arrived Griffin was unresponsive and drooling. Ann Griffin stated that the nursing home staff said they immediately noticed a change in Griffin and "knew something was wrong" after Nurse Ezell refilled his drug pump. Griffin was transported to the emergency room. Ann Griffin testified that she was

3

informed by a doctor at the hospital that Griffin overdosed. Ann Griffin also stated that she was told that the overdose could have been the result of "something [that] dripped subcutaneously under [Griffin's] skin.

In the medical records, the Plaintiffs point to statements where indicated that the pump was working properly. For example, Dr. Troy Davis noted that a "rep for the pump was called out" and after evaluating it found it was "working properly." Dr. Andrea Toomer, also noted that a nurse accessed the pump and that the return volume of 25 ml indicated that the pump was "working as it should be." The medical records also contain entries stating that Griffin was admitted at the hospital "with baclofen overdose from a misplaced pump refill injection." Dr. Toomer further "suspect[ed] that small volume [of the medicines] may have been instilled subcutaneously." The emergency documentation also stated that Griffin's preliminary diagnosis was "accidental drug overdose" of baclofen. It further provides that Griffin slumped over wheelchair after contracted nurse refilled the implanted pump.

The motion for summary judgment came for hearing before the district court on January 29, 2021, and the district court denied the motion from the bench.

**DISCUSSION**

As noted above, the Defendants seek supervisory review of the district court's January 29, 2021 ruling, which denied its motion for summary judgment based on the Plaintiff's absence of a medical expert.

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Garrison v. Old Man River Esplanade, L.L.C.,* 2013-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700; *Samaha v. Rau*, 2007–1726

4

(La. 2/26/08), 977 So.2d 880; *Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, p. 3 (La. 11/29/06), 950 So.2d 544, 546. "A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 2010-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-1006; *Smith v. Treadaway*, 2013-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828.

La. C.C.P. art. 966(A)(3) provides that a motion for summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id.*

La. C.C.P. art. 966(D)(1) sets forth the burden of proof in summary judgment proceedings, as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the

5

existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).

In a malpractice action based on the negligence of a physician licensed the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

La. R.S. 9:2794(A).

The Defendants first argue that the district court erred in finding the documents attached to the Plaintiffs' opposition, which were neither certified nor attached to an affidavit, sufficient to defeat summary judgment.

It is well established that unverified and/or unauthenticated documents are not competent evidence on motions for summary judgment. This Court in *Daniel*

6

*v. Clarion Inn & Suites*, 2016-0760, p. 10 (La. App. 4 Cir. 2/22/17), 214 So.3d 38, 44, recently explained:

> We have repeatedly held that "[i]n meeting the burden of proof, unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and therefore will not be considered." *Williams v. Memorial Medical Center*, [20]03-1806, p. 14 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053.
>
> "The requirement that documents be verified or authenticated is not merely a mechanical one of form only. It is based on the fundamental fact that such documents are not self-proving." *Schully v. Hughes*, [20]00-2605, p. 5 (La. App. 4 Cir. 6/5/02), 820 So.2d 1219, 1222. To allow unverified and or unauthenticated documents to be considered would result in "all manner of worthless documents [to] magically somehow become admissible by virtue of merely stapling them to a motion for summary judgment." *Id.*

*Id.* (quoting *Person v. 2434 St. Charles Ave. Condominium Ass'n*, 2011-1097, pp. 4-5 (La. App. 4 Cir. 3/7/12), 88 So.3d 679, 682).

> However, La. C.C.P. art. 966(D)(2) provides:
>
> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. **Any objection to a document shall be raised in a timely filed opposition or reply memorandum.** The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider. [Emphasis added].

Comment (k) of La. C.C.P. art. 966 also states that this subparagraph is "explicit that an oral objection to any document cannot be raised at the hearing on the motion for summary judgment and that a court must consider all documents to which there is no objection."

Here, the Defendants claim that they objected to the evidence the Plaintiffs submitted because the medical records were uncertified. However, the writ application does not contain a reply memorandum objecting to the evidence. The transcript of the hearing is also not included in the record. However, because the

comments to the article make it clear that any objection to summary judgment evidence cannot be made orally at the hearing on the motion and there is no memorandum evidencing the objection, therefore, the district court was correct in finding that the medical records attached to the Plaintiff's opposition should be considered. The defendants' first argument therefore lacks merit.

The Defendants also claim that the district court erred in denying its motion because the Plaintiffs failed to produce evidence to create a genuine issue of material fact.[1] This assignment of error also lacks merit.

Although Dr. Irvin opined that Pentec and Ezell complied with the applicable standard of care and stated that the pump itself malfunctioned, as noted by the Plaintiffs in their opposition, Dr. Irvin did not examine Griffin nor observe the Codman pump that was implanted in Griffin's abdomen. The medical notes of Griffins' treating and consulting documents, on the other hand, indicated that there was no pump failure but nevertheless provided Griffin's condition was the result of an overdose. Moreover, while Dr. Irvin indicated that Codman pumps had been known to have release higher doses of drugs, he did not state the particular Codman pump inside Griffin actually malfunctioned. Additionally, while the Plaintiffs have not yet retained an expert, because the medical records suggest that that pump was working correctly and that Griffin's loss of consciousness was caused by a drug overdose, genuine issues of material fact exist concerning

---

[1] The Defendants note that this Court in *Richard v. Par. Anesthesia Assocs., Ltd.,* 2012-0513 (La. App. 4 Cir. 12/14/12), 106 So. 3d 730, *writ denied*, 2013-0116 (La. 3/1/13), 108 So.3d 1179, considered a case factually similar in that the plaintiff was a chronic pain patient who had a Codman pump installed. In *Richard*, minutes after a physician refilled the pump the patient became unresponsive. However, Defendants note that it was uncontested in *Richard* that the patient "suffered from an overdose as a result of the refill procedure" *Id.*, at p., 2, 106 So. 3d at 732. Additionally, the plaintiff therein offered testimony of three doctors who opined that that physician incorrectly performed the refill and that it amount to a deviation of the applicable standard of care. *Id.* at p. 8, 106 So.3d 730, 735. The Defendants aver that as a result *Richard* is not instructive.

whether the Defendants breached the standard of care. Ann Griffin also testified that nursing home staff noticed a change in Griffin immediately following the refill of his drug pump. She was further advised at the hospital by medical staff that Griffin had overdosed. As such, summary judgment is not warranted. Accordingly, we find that the district court did not err in denying the motion for summary judgment.

**WRIT DENIED; RULING AFFIRMED**