798 So.2d 1121 (2001)
Thelma McDANIEL, et al.
v.
Dr. Charles E. REED, et al.
No. 2000-CA-2529.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2001.
*1122 Roy S. Halcomb, Jr., Broussard, Bolton, Halcomb & Vizzier, Alexandria, LA, Counsel for Plaintiff/Appellant.
Richard P. Ieyoub, Attorney General, John B. Saye, Special Assistant Attorney General, Hayes, Harkey, Smith & Cascio, Monroe, LA, and Patricia A. Traina, Berrigan, Litchfield, Schonekas, Mann, Traina and Thompson, L.L.C., New Orleans, LA, Counsel for Defendant/Appellee.
Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, and Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
The plaintiffs, Thelma McDaniel, Patricia McDaniel Daigre, and Samuel McDaniel, the surviving spouse and children of David Lee McDaniel ("Mr. McDaniel"), appeal from a summary judgment dismissing their medical malpractice claims against the defendants, Ladonna Ford, M.D., and the State of Louisiana, Louisiana Healthcare Authority d/b/a E.A. Conway Medical Center ("Conway Medical Center"). We review the granting of motions for summary judgment de novo.
In August 1989, Mr. McDaniel went to Franklin Parish Hospital complaining of headaches and vomiting blood. He was transferred to Conway Medical Center on 27 August 1989, where Dr. Ford, an internist, treated him. After a CT scan revealed a cerebral aneurysm, Mr. McDaniel was transferred to Charity Hospital in New Orleans, where he underwent surgery and later died from a subarachnoid hemorrhage on 9 September 1989.
On 22 June 1992, plaintiffs filed suit against Dr. Ford and Conway Medical Center, among others, alleging the defendants were negligent and breached the applicable standard of care by failing to timely diagnose the subarachnoid hemorrhage. Following discovery, neither the plaintiffs' witness list nor their answers to interrogatories disclosed the name of an expert in internal medicine. Defendants, therefore, filed a motion for summary judgment arguing that the plaintiffs cannot establish the applicable standard of care and/or a breach thereof by Dr. Ford and Conway Medical Center. In support of their motion, the defendants attached the affidavit of Thomas Oelsner, M.D., a specialist in internal medicine, who averred that, based upon his training and experience and a review of Mr. McDaniel's medical records, Dr. Ford and the staff of Conway Medical Center did not deviate from the applicable standard of care in treating Mr. McDaniel.
The plaintiffs, in opposition to the defendants' motion for summary judgment, offered the deposition testimony of Lycurgus M. Davey, M.D., a board certified neurosurgeon, who testified that Dr. Ford and other staff members at Conway Medical Center breached the applicable standard of care by failing to timely diagnose and treat the subarachnoid hemorrhage that caused Mr. McDaniel's death. The plaintiffs also offered deposition testimony from several other physicians, including Dr. Ford, who each testified that the education and basic training of medical students includes learning and identifying the symptoms of a subarachnoid hemorrhage for diagnosis purposes. The trial judge granted the defendants' motion for summary judgment.
*1123 To prevail in a medical malpractice case, the plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiff's injuries resulting therefrom. La. R.S. 9:2794(A).
Where the alleged acts of negligence raise issues peculiar to the particular specialty involved, then only those qualified in that specialty may offer evidence of the applicable standard of care. La. R.S. 9:2794(A)(1). However, it is a specialist's knowledge of the requisite subject matter, rather than the specialty within which the specialist practices, which determines whether a specialist may testify as to the degree of care which should be exercised. A particular specialist's knowledge of the subject matter on which he is to offer expert testimony is determined on a case by case basis. McLean v. Hunter, 495 So.2d 1298 (La.1986).
Nonetheless, expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. As a general rule, a plaintiff can prevail under such circumstances when a defendant/physician or a defense expert testifies regarding the standard of care, and the objective evidence at trial is such that a lay jury can infer negligence from the facts. Pfiffner v. Correa, 94-0924, 94-0963, and 94-0992 (La.10/17/94), 643 So.2d 1228, 1230.
In McLean v. Hunter, supra, the Louisiana Supreme Court found that a periodontist was qualified to testify as to the standard of care expected of general dentists practicing in the same locale as the defendant regarding periodontal care.
Similarly, in Roberts v. Warren, 01-1342 (La.6/29/01), 791 So.2d 1278, the Louisiana Supreme Court held that a board certified oral surgeon was qualified to testify as an expert in a dental malpractice case against a general dentist regarding the applicable standard of care in dealing with the extraction of teeth from a site at which a bacterial infection was present. The Court found that the oral surgeon's affidavit and the depositions in evidence, including that of the defendant, established that the treatment at issue involved basic general dentistry and dental principles that are universally recognized by all dentists and taught in all dental schools.
In Leyva v. Iberia General Hospital, 94-0795 (La.10/17/94), 643 So.2d 1236, the Louisiana Supreme Court considered whether a board certified obstetrical surgeon was qualified to testify as an expert as to the standard of care applicable to a general practitioner from a different locale who performed a tubal ligation. The Court concluded that "[w]here there is a uniform nationwide method for performing a particular medical procedure, an expert having knowledge of such method is qualified to testify, and that the testifying expert in this circumstance is not constrained by the need to have practiced in a similar community or locale and under similar circumstances." Leyva, 94-0795, 643 So.2d at 1239 (citing Piazza v. Behrman Chiropractic Clinic, Inc., 601 So.2d 1378 (La. 1992)).
In Soteropulos v. Schmidt, 556 So.2d 276 (La.App. 4 Cir.1990), this Court found that where medical disciplines overlap, specialists in one field may give expert testimony as to the standard of care applicable to areas of the practice of medicine common to both disciplines; orthopedic surgeons were allowed to give their expert opinions regarding a vascular surgeon's adherence to the standard of care in performing a below-knee amputation.
In Smith v. Juneau, 94-2440 (La.9/29/94), 642 So.2d 860, the Louisiana *1124 Supreme Court, without giving reasons, ordered that a physician who practiced in physical medicine and rehabilitation be allowed to testify as to the standard of care applicable to an orthopedic surgeon in a medical malpractice case in which the plaintiff, who was placed in a pelvic sling following surgery, alleged the surgeon's failure to render adequate skin care caused a large decubitis (bedsore) on his buttock. On subsequent appeal of the jury verdict in the case, the defendant again raised the issue of the physical medicine and rehabilitation specialist's ability to testify, and this court concluded that a patient's skin care is not peculiar to any one specialty and thus any qualified physician could testify as to the applicable standard of care. Smith v. Juneau, 95-0724 (La. App. 4 Cir.4/9/97), 692 So.2d 1365.
Regarding a medical diagnosis rather than a procedure, in Slavich v. Knox, 99-1540 (La.App. 4 Cir. 12/15/99), 750 So.2d 301, this Court held that the trial court did not err in allowing a general surgeon to testify as to the standard of care applicable to an internist who failed to diagnose a liposarcoma in a female patient.
The instant case has been in litigation since 1992 and the plaintiffs have not been able to produce an expert in internal medicine. The fact that Dr. Davey is a neurosurgeon rather than a specialist in internal medicine applies only to the effect on the weight to be given to his testimony, not to its admissibility. See Bernard v. Lott, 95-0167 (La.App. 4 Cir. 12/28/95), 666 So.2d 702.
Dr. Davey's testimony and the deposition testimony from the other physicians submitted by the plaintiffs in opposition to the motion for summary judgment indicate that the diagnosis of a subarachnoid hemorrhage is not limited to a particular specialty. In view of this and the jurisprudence that allows a physician to give expert testimony outside of his (her) specialty provided he (she) has adequate knowledge of the requisite subject matter, the trial court erred in granting summary judgment solely on the basis that the plaintiffs do not have an expert in internal medicine.
Accordingly, the judgment of the trial court granting summary judgment in favor of Dr. Ford and Conway Medical Center is reversed. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED