Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,127-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TONY LOGAN                                      Plaintiff-Appellant

versus

RICHLAND PARISH                                 Defendants-Appellees
HOSPITAL, ET AL

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 47,961C

Honorable Stephen Gayle Dean, Judge

* * * * *

LAW OFFICE OF ANTHONY J.                        Counsel for Appellant
BRUSCATO
By: Anthony J. Bruscato

WATSON, BLANCHE,                                Counsel for Appellee,
WILSON & POSNER                                 Richland Parish Hospital
By: Calli M. Boudreaux                          Service District 1-B d/b/a
    Hunter J. Tassin                            Richardson Medical Center

COWAN LAW FIRM, LLC                             Counsel for Appellees,
By: Thomas C. Cowan                             Stacy Holston Zeller
    Sheri S. Gilbert                            M.D., and Leslie Highfill
    Dax C. Foster                               Oglesby, M.D.

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**COX, J.**

This case arises out of the Fifth Judicial District Court, Richland Parish, Louisiana. Tony Logan filed a medical malpractice suit against Richland Parish Hospital Service District 1-B d/b/a Richardson Medical Center ("Richland"), Dr. Stacy Holston Zeller, and Dr. Leslie Oglesby. Dr. Oglesby was later dismissed from the suit. The trial court granted two motions for summary judgment in favor of Richland and Dr. Zeller. Logan now appeals. For the following reasons, we affirm the trial court's judgment.

## FACTS

On December 2, 2020, Mr. Logan filed his petition for damages against Richland, Dr. Zeller, and Dr. Oglesby. Mr. Logan alleged that on November 14, 2017, he was taken to the emergency room at Richland for bleeding in his right ear and nausea. He asserted that he was placed in a bed in the ER and given a bed pan in the event he threw up. He stated that the bed rails were down, and the head of the bed was elevated. While sitting in the bed, Mr. Logan felt nauseous and leaned forward to his right side where the bed pan was placed. Mr. Logan alleged that when he was attempting to vomit into the bed pan, he fell out of the right side of the bed and struck his head on the floor. He stated that he was placed back in the bed, he was in and out of consciousness, and he could not speak. A CT scan revealed a large skull fracture, and he was transported to Rapides Regional Medical Center. Rapides Regional Medical Center then transported him to University Medical Center in New Orleans.

Mr. Logan was treated with medication, and surgery was performed on December 15, 2017. Mr. Logan was discharged on December 26, 2017,

and received daily injections at University Health Monroe. He alleged that his injuries were caused by the lack of prudent care and good medical practices by Dr. Zeller and Dr. Oglesby (the attending doctors at Richland) and the nursing staff at Richland. He stated that they failed to provide the appropriate standard of care for a nauseous patient in the ER because they allowed him to remain in the ER room unattended and/or in the bed, without bed rails being in the raised position to prevent any fall from the bed and onto the floor. He alleged that Richland is vicariously liable as the employer of the doctors and nurses.

Richland filed its answer, denying the allegations. Richland stated that the Medical Review Panel found that the evidence did not support the conclusion that Richland failed to meet its applicable standard of care. Drs. Zeller and Oglesby answered, denying the allegations. They stated that they exceeded the applicable standard of care, and Mr. Logan failed to mitigate any damage.

The Medical Review Panel stated the following in its October 16, 2020, opinion:

> The evidence does not support the conclusion that the defendants, DR. LESLIE OGLESBY, DR. STACY ZELLER AND [RICHLAND], OR ITS EMPLOYEES, failed to meet the applicable standard of care in the treatment of TONY LOGAN as charged in the complaint. The reasons for this conclusion by the PANEL are that:
>
> (1) On November 13, 2017, Tony Logan presented to [Richland's] emergency department with a chief complaint of having stuck a Q-Tip in his right ear which resulted in a right ear bleed. Mr. Logan advised that he was a hemophiliac. The emergency room physician contacted Mr. Logan's hematologist in Shreveport and after said consultation gave orders for Mr. Logan to be administered Desmopressin IV. However, prior to the administration of the Desmopressin, Mr. Logan stated that he had to go outside to his car, walked out of the hospital and did not return that day.

2

(2) On November 14, 2017, at approximately 5:03 p.m. Mr. Logan again presented to [Richland's] emergency department with complaints of right ear bleed that had started the night before, coughing up blood since the night before and having a headache. Mr. Logan was triaged and his vital signs were within normal limits. Mr. Logan had no complaints of pain. Mr. Logan was examined by Dr. Oglesby. Her examination of Mr. Logan revealed that he was not in acute distress, was alert, oriented times 3 with no motor or sensory deficits. Dr. Oglesby performed a physical examination which was unremarkable except that Mr. Logan had pharyngeal redness and a small hematoma with dried blood in his right ear canal. Dr. Oglesby did a systems review, all of which were negative except for Mr. Logan's complaint of a headache. Dr. Oglesby ordered blood work. While waiting on the blood work results Dr. Oglesby's shift ended and Dr. Zeller's shift began, with Dr. Zeller assuming the care of Mr. Logan. Dr. Oglesby discussed with Dr. Zeller Mr. Logan's complaints and her examination findings and advised Dr. Zeller that the lab results had not yet been received. Dr. Oglesby then ended her shift at approximately 5:45 p.m. and had no further contact with Mr. Logan. While waiting for the lab results Mr. Logan was placed in a bed in the emergency department. As per the nurses' notes the bed was in the lowest position, brakes on with both side rails up. At approximately 6:30 p.m. Mr. Logan was found on the floor next to his bed. He informed the nurses that he had "rolled out of the bed" onto the floor. Dr. Zeller was notified and examined Mr. Logan. Dr. Zeller issued appropriate orders for tests including a CT scan of the head and an EKG. The CT scan revealed that Mr. Logan had an acute subdural hematoma. Dr. Zeller promptly made arrangements for Mr. Logan to be airlifted to a facility with a higher level of care that had neurosurgery services. Mr. Logan was then airlifted to Rapides Regional Medical Center.

(3) The care and treatment rendered to Mr. Logan by Dr. Oglesby was appropriate and within standard of care. Dr. Oglesby performed an appropriate examination of Mr. Logan and appropriately ordered lab work. While waiting for the lab results Dr. Oglesby's shift ended and she discussed Mr. Logan's situation with Dr. Zeller, who was the oncoming emergency room physician who assumed care of Mr. Logan. Dr. Oglesby left the emergency department at about 5:45 p.m. and had no further contact with Mr. Logan.

(4) Dr. Zeller's care and treatment of Mr. Logan was appropriate and within standard of care. Dr. Oglesby discussed Mr. Logan's situation with Dr. Zeller and Dr. Zeller was informed that lab results were to be received. At about 6:30 p.m. Dr. Zeller was advised that Mr. Logan had been found on

3

the floor next to his bed and Dr. Zeller promptly examined Mr. Logan and ordered appropriate tests, including a CT scan of the head. When the CT scan showed that Mr. Logan had an acute subdural hematoma, Dr. Zeller immediately made arrangements for Mr. Logan to be airlifted to [a] facility with a higher level of care where neurosurgery services were available.

(5) The care and treatment rendered to Mr. Logan by the nurses and employees of [Richland] was appropriate and within [the] standard of care. The nursing assessment and Dr. Oglesby's assessment of Mr. Logan upon his presentation to [Richland's] emergency department on November 14, 2017 showed that Mr. Logan was alert, oriented, ambulatory, with normal systems review and a normal neurologic exam. The nurses documented in the hospital record, prior to Mr. Logan being found on the floor, that Mr. Logan was in his bed with both side rails up, the bed in the lowest position with bed brakes on. Mr. Logan gave no indication that he was a fall risk prior to his being found on the floor next to his bed. It was appropriate for the nurses to have placed Mr. Logan in bed while waiting on the lab results. There was no need for any further safety precautions to have been put in place prior to Mr. Logan being found on the floor.

Richland filed a motion for summary judgment on December 28, 2022. It argued that there is no genuine issue of material fact as to any allegations of malpractice against it. Richland attached the Medical Review Panel opinion and Mr. Logan's answers to interrogatories. Dr. Zeller and Dr. Oglesby filed their motion for summary judgment on January 13, 2023. They stated that Mr. Logan failed to produce any expert opinion in support of his case, and without the expert, Mr. Logan cannot carry his burden of proof, and they are entitled to summary judgment as a matter of law. Dr. Zeller and Dr. Oglesby attached Mr. Logan's medical review complaint, the Medical Review Panel opinion, Mr. Logan's petition for damages, and Mr. Logan's answers to interrogatories.

On January 17, 2023, Mr. Logan filed a motion and order for a telephone status conference regarding scheduling of hearing dates. On January 24, 2023, Mr. Logan filed another motion and order for telephone

status conference and alleged that he had not received all requested discovery, specifically the incident report, missing medical records, and minutes from board meetings of Richland's staff committee meetings related to his incident.

On March 27, 2023, Mr. Logan voluntarily dismissed Dr. Oglesby with prejudice. On July 7, 2023, Richland filed a motion and order to reset the hearing on the motion for summary judgment. Mr. Logan opposed the motion to reset Richland's motion for summary judgment hearing. He stated that discovery is ongoing, and he is waiting for Richland to produce a copy of the investigative report. Mr. Logan attached a copy of Mirandi Spencer's, the supervising nurse, deposition. He stated that the deposition shows that Nurse Spencer went to get a copy of the report during the deposition, but she could not find it.

After a series of rescheduling requests, Dr. Zeller and Richland filed a proposed scheduling order, which stated Mr. Logan's experts must be identified and reports provided by December 15, 2023, and Defendants' experts must be identified and reports provided by January 12, 2024. The scheduling order was filed and signed on August 31, 2023.

Mr. Logan filed his opposition to both motions for summary judgment on February 20, 2024. He asserted that Dr. Zeller's deposition was contradictory and highlighted the following passages. First, Dr. Zeller said Mr. Logan's hematoma would have been present before his fall because it was so large when imaged after his fall. Then, Dr. Zeller stated that she did not suspect a pre-existing hematoma until after Mr. Logan fell. Dr. Zeller also stated that she suspected an intracranial bleed prior to Mr. Logan's fall, but she was not sure of it until after his fall when the CT was performed.

5

Mr. Logan alleged that if Dr. Zeller suspected an intracranial bleed, she breached the appropriate standard of care.

Mr. Logan also argued that the nurses stated the bed rails being up is the appropriate standard of care. However, Mr. Logan testified in his deposition that the side rails were down when he fell. He asserted that there is an issue as to whether the bed rails were ever raised or if someone later lowered one. He asserted that the Medical Review Panel mistakenly believed that both rails were up at the time of Mr. Logan's fall. Mr. Logan also noted a problem with spoliation of evidence because the charting data was deleted, and the incident report was missing. Mr. Logan attached the following items to his opposition:

Exhibit A: Affidavit of Dr. Stella Fitzgibbons with attached CV

Exhibit B: Affidavit of Tony Logan

Exhibit C: Affidavit of Cynthia Murphy

Exhibit D: Page 1 of hospital's contemporaneous incident report noting that one bed rail was down at the time of Mr. Logan's fall

Exhibit D(1): Plaintiff's request for production and defense response claiming incident report is privileged

Exhibit D(2): Hospital's opposition to motion to compel pp. 3-4, stating that portions of incident report other than page 1 have been lost

Exhibit E: Deposition of Dr. Oglesby

Exhibit F: Deposition of Dr. Zeller

Exhibit G: Deposition of Lora Bartholomew, R.N.

Exhibit H: Deposition of Mirandi Spencer, R.N.

Exhibit I: Deposition of Michael Parker, R. N.

Exhibit J: Deposition of Ashley McGowan, R. N.

Exhibit K: Deposition of Tony Logan

Exhibit L: Deposition of Cynthia Murphy

On February 21, 2024, Richland filed a motion to strike the affidavit of Dr. Fitzgibbons because Mr. Logan was required to identify his experts and provide expert reports by December 15, 2023, per the scheduling order. Richland stated that it was not aware Mr. Logan retained an expert until the opposition to summary judgment was filed on February 20, 2024. Dr. Zeller also filed a motion to strike Dr. Fitzgibbons' affidavit on the same grounds argued by Richland. Mr. Logan opposed the motions to strike. He argued that he had no knowledge of the scheduling order being signed by the trial court.

On March 7, 2024, a hearing was held on Mr. Logan's motion to compel production of the investigative report; the motions to strike; and motions for summary judgment. The trial court found that the evidence showed that the report could not be found; therefore, Mr. Logan's motion to compel was denied. The trial court granted the Defendants' motions to strike. It found that Mr. Logan's counsel had "more than ample opportunity to be aware" that the scheduling order was signed, as a simple check of the record would have revealed this. The trial court stated that even if Mr. Logan's counsel was not aware of the scheduling order, the statutory deadline for filing the disclosure of experts in La. C.C.P. art. 1425 had lapsed. The trial court granted the motions for summary judgment, agreeing with the Defendants' motions and memoranda in support thereof. Mr. Logan now appeals.

**DISCUSSION**

*Motion to Strike*

Mr. Logan argues that the trial court's decision to strike Dr. Fitzgibbons' affidavit was an abuse of discretion. He explains that the defense submitted a scheduling order to the trial court, and it was signed by the duty judge. However, the trial court did not send out a copy of the signed order to his counsel. Mr. Logan admits that his counsel was sent a copy of the order by defense counsel before it was signed. He states that because he never received the signed order, Dr. Fitzgibbons' affidavit was submitted timely.

Mr. Logan states that although Dr. Fitzgibbons' opinion was served on the defense after the cutoff date, it was 83 days prior to the trial date. Mr. Logan argues that because the error came from the clerk's office, the trial court had discretion to continue the hearing date and not impose the harsh remedy of excluding the evidence. He argues that the trial court erred in reasoning that the evidence would have been late under La. C.C.P. art. 1425. He states that this article is not applicable in cases where a scheduling order has been signed.

A trial court's decision on a motion to strike an expert affidavit is reviewed under an abuse of discretion standard. *Liles v. Great W. Cas. Ins. Co.*, 54,565 (La. App. 2 Cir. 7/13/22), 342 So. 3d 1160.

The Defendants moved to strike Dr. Fitzgibbons' affidavit, and the trial court granted the motion. The trial court's decision to strike Dr. Fitzgibbons' affidavit was not an abuse of discretion. Mr. Logan fell from the bed on November 14, 2017, the suit was filed on December 2, 2020, and Dr. Fitzgibbons' affidavit was filed on February 20, 2024. The scheduling

8

order was submitted to the trial court for approval.  We find no merit in Mr. Logan's argument that because he was unaware of the trial court signing the order, the order was inapplicable.  Mr. Logan's counsel had an unsigned copy of the order.  If there was any question about whether the scheduling order was in effect, counsel could have confirmed the schedule in the record or with opposing counsel.

Assuming arguendo that the scheduling order was not effective for lack of sending the signed copy, Mr. Logan's expert affidavit was filed after the 90-day deadline in La. C.C.P. art. 1425.[1]  The trial was set for May 13, 2024, and Dr. Fitzgibbons' affidavit was filed February 20, 2024, which was 83 days before trial.  Therefore, it was within the trial court's discretion to strike the affidavit.  We affirm the trial court's granting of the motion to strike.

---

[1] La. C.C.P. art. 1425 provides, in pertinent part:

B. Upon contradictory motion of any party or on the court's own motion, an order may be entered requiring that each party that has retained or specially employed a person to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony provide a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information considered by the witness in forming the opinions.  The parties, upon agreement, or if ordered by the court, shall include in the report any or all of the following: exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

C. If the court orders the disclosures of Paragraph B of this Article, they shall be made at the times and in the sequence directed by the court.  In the absence of directions from the court or stipulation by the parties, the disclosures ordered pursuant to Paragraph B of this Article shall be made at least ninety days before the trial date or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Paragraph B of this Article, within thirty days after the disclosure made by the other party.  The parties shall supplement these disclosures when required by Article 1428.

9

*Motions for Summary Judgment*

Mr. Logan argues that the trial court erred in granting summary judgment to Richland. He asserts that the undisputed evidence establishes fault and presents issues of fact as to causation. He states that three witnesses (Dr. Oglesby, Nurse Parker, and Nurse Batchelor) testified that the standard of nursing care is to keep the bed rails raised. He asserts that there is evidence to support the conclusion that hospital personnel left the bed rail down, and he fell out on the side that was down. He argues that the fact finder could properly conclude that Mr. Logan fell due to the fault of nursing personnel in leaving one rail down.

Mr. Logan disputes the hospital's argument that there is no proof that he was injured. He argues that even if he had a pre-existing hematoma, it is not proof that he did not suffer injury. He asserts that at a minimum, there is no proof that the fall would not have exacerbated a hematoma. Mr. Logan also points to testimony from Ms. Murphy that he fell from the bed on his head, with the full weight of his body behind the fall. He requests this Court reverse the trial court's granting of the hospital's MSJ.

Richland argues that the trial court was correct in granting its MSJ. It highlights that the Medical Review Panel found no breach of the standard of care; therefore, it met its burden of proof on MSJ and the burden shifted to Mr. Logan to show that he would be able to satisfy his burden of proof at trial. Richland asserts that Dr. Fitzgibbons' untimely affidavit was not relevant because it only opined as to a breach of the standard of care of Dr. Zeller, not Richland.

Mr. Logan argues that the trial court erred in granting summary judgment to Dr. Zeller. He argues that substantial evidence, including Dr.

10

Zeller's testimony and Dr. Fitzgibbons' verified opinion, supports the conclusion that there is a fact issue as to whether Dr. Zeller breached the standard of care, causing injury to Mr. Logan. He admits that if this Court finds the trial court did not err in striking Dr. Fitzgibbons' affidavit, then Dr. Zeller prevails. However, if this Court finds that the trial court erred in striking the affidavit, then there is a genuine issue of material fact as to whether Dr. Zeller breached the standard of care resulting in his injury. He requests the trial court's rulings on Dr. Zeller's MSJ be reversed and the case remanded for further proceedings.

Dr. Zeller argues that it was unnecessary for the trial court to consider Dr. Fitzgibbons' affidavit after it was stricken as untimely. She asserts arguendo that even if the affidavit was not stricken, it did not establish a duty owed by Dr. Zeller to Mr. Logan, the standard of care for custodial treatment of a patient in an ER or provide any evidence that she caused or contributed to Mr. Logan's alleged injuries.

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Price Behalf of Price v. Minden Med. Ctr.*, 52,499 (La. App. 2 Cir. 2/27/19), 266 So. 3d 452.

The procedure for a motion for summary judgment is provided in La. C.C.P. art. 966. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons

11

could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794(A). Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002; *Price, supra.*

In brief, Mr. Logan hinges a portion of his argument against Richland on Dr. Fitzgibbons' affidavit, which he argues states that the fall caused his subdural hematoma. Because we have affirmed the striking of Dr. Fitzgibbons' affidavit, this portion of the argument is moot.

The medical review panel found no breach of the standard of care by Richland and its employees. As Mr. Logan highlights, the nurses agreed in their depositions that the standard of care would be for both bed rails to be raised. The medical review panel found no breach of the standard of care because the bed was placed in the appropriate position with the bed rails up. However, Mr. Logan does not submit evidence that *Richland's personnel* lowered the bed rail. We cannot make the leap from the bed rail should be raised and Mr. Logan fell out of the bed so it must have been the hospital personnel who lowered the rail down. Therefore, we affirm the motion for summary judgment in favor of Richland.

12

As admitted by Mr. Logan, without the affidavit of Dr. Fitzgibbons, the motion for summary judgment in favor of Dr. Zeller was appropriately granted.  Mr. Logan offered no other evidence regarding the fault of Dr. Zeller.  Therefore, we affirm the summary judgment in favor of Dr. Zeller.

## CONCLUSION

For the reasons expressed above, we affirm the trial court's granting of the Defendants' motions to strike and summary judgment.

**AFFIRMED.**